UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:25-cv-03080 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| WESTLAKE SERVICES, LLC DBA ) | |
| WESTLAKE FINANCIAL, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff, James Thompson ("Plaintiff"), filed a Complaint against Defendant Westlake Services, LLC dba Westlake Financial ("Defendant") alleging Defendant and Windy City Motors ("Dealer") materially misrepresented to him that executing a financing agreement for his 2018 Toyota Sienna ("Vehicle") would repair his credit to induce his purchase. Plaintiff further alleges that, on July 17, 2024, Bulldog Recovery aka Madd Dog Recovery ("Bulldog") repossessed the Vehicle at Defendant's direction without proper notice of a valid security interest. Manheim Milwaukee ("Manheim") subsequently sold the Vehicle. Plaintiff finally alleges Defendant falsely reported a default to Equifax, Inc. ("Equifax") and Experian Information Solutions, Inc. ("Experian"), affecting his creditworthiness.

In his Complaint, Plaintiff seeks damages for the following causes of action: (1) violation of the Credit Report Organizations Act ("CROA"), 15 U.S.C. §§ 1679 et seq.; (2) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq.; (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2; (4) fraudulent inducement; (5) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b); (6) violation of the Uniform Commercial Code ("UCC") § 9-609; (7) breach of the peace; (8) identity theft; (9)

1

violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq.; (10) forgery; (11) negligence; (12) breach of contract; (13) unjust enrichment; and (14) violation of the Racketeer Influenced and Corrupt Practices Act ("RICO").

Currently before the Court is Defendant's Motion to Dismiss ("Motion") all claims asserted pursuant to Rules 8, 9, and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendant's Motion [16].

**BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Plaintiff's Complaint, (Dkt. 1), and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Plaintiff is a resident of Cook County, Illinois. Defendant is a corporation engaged in vehicle financing with its principal place of business in California and conducting business in Illinois. Dealer is an Illinois corporation engaged in selling vehicles and providing purported credit repair services with its principal place of business in Cook County, Illinois. Manheim is a Wisconsin corporation engaged in vehicle auctions and sales. Bulldog is a corporation engaged in repossession services with its principal place of business in Illinois. Equifax is a corporation engaged in credit reporting services with its principal place of business in Georgia. Experian is a corporation engaged in credit reporting services with its principal place of business in California.

In or around December 2021, Dealer advertised its credit repair services using a prominent billboard stating, "We Fix Credit." Plaintiff claims to have been induced by this advertisement and approached Dealer, which represented that purchasing a vehicle and financing it through Dealer would

2

improve his credit. Upon information and belief, Defendant and Dealer agreed to share in the profits and losses reflecting their mutual financial stake and acted together to extract a $2,500.00 upfront payment and additional installment payments from Plaintiff.

Subsequent to Plaintiff's purchase, Plaintiff claims Defendant and Dealer engaged in an orchestrated scheme involving multiple acts of "mail and wire fraud" that included sending "misleading financial statements" and electronic communications to Plaintiff and other customers and "falsely representing the terms of credit repair and vehicle financing services." Plaintiff alleges this scheme was designed to induce reliance on false information, thereby extracting financial payments under "fraudulent pretenses" and "unlawfully" seizing vehicles without proper legal authority. Plaintiff further states this "pattern of racketeering activity" was conducted as part of Defendant's standard business operations, demonstrating their intent to participate in an association-in-fact enterprise with the shared objective of "generating illicit profits at the expense of Plaintiff and similarly situated individuals."

During this "scheme," Plaintiff alleges Defendant engaged in telemarketing calls to Plaintiff's personal phone, Despite Plaintiff's explicit instructions his number was for emergency purposes only and instructing Defendants to terminate the calls. Calls were made to the Plaintiff's cellular phone number ending in 4718 from the number 833-935-4090 on the following dates and times: 1-24-2022 at 11:35 am; 1-25- 2022 at 11:18 am; 1-27-2022 at 10:57 am; 1-28-2022 at 2:21 pm; 1-29-2022 at 12:42 pm and 5:46 pm; 1-31-2022 at 11:36 am; 2-1-2022 at 11:13 am and 2:22 pm; 2-3-2022 at 10:50 am and 2:03 pm; 2-4-2022 at 10:29 am, , and 1:41 pm; 2-5-2022 at 11:07 am and 1:36 pm; 2-8-2022 at 10:38 am, 1:58 pm, and 4:26 pm; 2-9-2022 at 12:04 pm and 5:00 pm; and 2-10-2022 at 11:26 am. Additionally, calls were made from the number 877-557-5755 on the following dates and times: 1-27-2022 at 8:28 am; 1-28- 2022 at 1:40 pm twice in one minute; 1-31-2022 at 8:30 am and 11:03 am; 2-1-2022 at 3:00 pm; 2-2-2022 at 9:25 am and 1:23 pm; 2-7-2022 at 10:04 am; and 2-10-2022 at 1:18 pm and 3:43 pm.

Plaintiff alleges these calls resulted in significant annoyance, exacerbation of back injuries, inconvenience, and emotional distress.

Once he became aware of the Defendant's "fraudulent" behavior and after suffering distress from Defendant's calls, Plaintiff attempted to return the Vehicle to Dealer and demanded the security interest be terminated on our around May 17, 2022. Defendant ignored Plaintiff's rescission and accelerated the loan. Subsequently, on or about July 17, 2024, Bulldog, acting on Defendant's instructions, repossessed the Vehicle and Manheim subsequently auctioned the Vehicle. Defendant's recission further harmed Plaintiff's creditworthiness due to multiple hard inquiries and derogatory trades for the "fraudulent item" reported to Equifax and Experian.

Plaintiff ultimately states, Defendant's actions, conducted through joint ventures and individual practices, caused Plaintiff to suffer damages, including exacerbation of physical injuries, emotional distress, loss of economic and credit opportunities, increased costs due to credit repair and transportation needs, weight gain, related health effects, and reputational harm, warranting relief under federal and state statutes.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

The basic pleading requirement is set forth in Federal Rule of Civil Procedure 8(a)(2), which requires a complaint contain a "short and plain statement of the claim showing that the pleader is

4

entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require a plaintiff to plead particularized facts, the factual allegations in the complaint must sufficiently raise a plausible right to relief above a speculative level. *Arnett v. Webster*, 658 F.3d 742, 751-52 (7th Cir. 2011). While pro se complaints are construed liberally and held to a less stringent standard than pleadings drafted by lawyers, *id.* at 751, a pro se complaint still must provide fair notice of the plaintiff's claims and at least suggest a plausible right to relief. *Killebrew v. St. Vincent Health, Inc.*, 295 Fed. App'x 808, 810 (7th Cir. 2008).

**DISCUSSION**

Defendant moves to dismiss all counts of Plaintiff's Complaint, arguing Plaintiff does not procedurally or substantively comply with federal pleading requirements and that Plaintiff does not sufficiently allege any of his claims against Defendant. The Court addresses each argument in turn.

I. <u>Plaintiff's Compliance with Federal Pleading Requirements</u>

*A. Impermissible Shotgun Pleading*

Defendant argues the Complaint fails to notify Defendant of the conduct that forms the basis of each of Plaintiff's claims and that it should be dismissed as an "impermissible shotgun pleading." Courts have discouraged "shotgun" pleading where "each count incorporate[s] by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged [are] not material to the claim, or cause of action, appearing in a count's heading." *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001–02 (N.D. Ill. 2011) (Holderman, J.) (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir.2010)).

Defendant argues Plaintiff's Complaint falls squarely within this impermissible pleading style because it incorporates into each subsequent count all preceding paragraphs, failing to provide Defendant with sufficient notice of what Plaintiff is alleging because the allegations commingle different causes of action into each count; some of which contradict each other. (Dkt. 16 at *6).

Plaintiff argues, however, that dismissal, rather than amendment, is disfavored for a *pro se* plaintiff, such as himself, and additionally argues Defendant's detailed responses in its Motion prove it understood the claims alleged against it. (Dkt. 34 at *2).

While the Court agrees Plaintiff's current pleading style does not sufficiently provide Defendant with notice of the specific conduct which forms the basis for each claim, the Court believes the proper remedy for this impermissible pleading would be to allow amendment by the *pro se* Plaintiff. When a complaint fails to sufficiently state a claim for relief, a plaintiff should ordinarily be given an opportunity to amend the complaint to correct the problem if possible. *See* Fed. R. Civ. P. 15(a); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir.2010). In addition, based on the Court's duty to view a *pro se* complaint with an understanding eye, a district court may point a *pro se* litigant toward the correct procedure or take appropriate measures to permit the adjudication of *pro se* claims on the merits. *Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019). To account for the less stringent requirements *pro se* plaintiffs are held to, the Court will continue its analysis and make determinations on the merits of Plaintiff's claims, notwithstanding his impermissible form, and provide Plaintiff with an opportunity to amend his Complaint, accordingly.

### B. *Compliance with Rule 8*

Factual allegations in a complaint must sufficiently raise a plausible right to relief above a speculative level to be compliant with Rule 8. *Arnett*, 658 F.3d at 751-52.

Defendant argues Plaintiff's Complaint fails to comply with Rule 8 since his allegations are conclusory and without factual allegations to support his assertions. Specifically, Defendant argues Plaintiff improperly relies on his speculative assertion that Defendant and Dealer were involved in a joint venture of inducing the public to purchase vehicles under the false pretense of credit repair. (Dkt. 16 at *8). Instead of providing sufficient factual allegations, Plaintiff's Complaint merely sets

forth a legal conclusion that, upon his "information and belief," Defendant and Dealer agreed to share in profits generated from their "false pretense of credit repair." (*Id.*)

Because Plaintiff failed to respond to Defendant's argument that his Complaint does not comply with Rule 8, the Court finds he forfeited any opposition he might have had to Defendant's characterization of his pleadings. *See Boogard v. NHL*, 891 F.3d 289, 296 (7th Cir. 2018). Similar to the reasoning outlined above, however, the Court believes that Plaintiff should be granted leave to amend his Complaint to bring it in accordance with Rule 8, instead of dismissing his claims with prejudice on these grounds.

### C. Compliance with Rule 9

Defendant finally argues that Plaintiff's fraud claims, fraudulent inducement and ICFA claim, fail to meet Rule 9's heightened pleading standard. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted).

Plaintiff alleges that Dealer's billboard advertised that it fixed credit, misleading customers into believing its primary service was credit repair. (Dkt. 1 at *15). Plaintiff also alleges that Dealer intentionally misrepresented that purchasing a vehicle and financing through Defendant would improve his creditworthiness. (*Id.* at 16,45).

Defendant argues, and the Court agrees, that Plaintiff's generic use of terms such as "dealer's agent" and "Defendants" when referring to the alleged misrepresentations, fails to satisfy the pleading specificity Rule 9(b) requires. As it stands, Plaintiff's Complaint fails to specifically allege who from Defendant made a misrepresentation to Plaintiff, what the actual misrepresentation was, how Defendant made the misrepresentation, and where Defendant made the misrepresentation to Plaintiff

to induce him into the transaction. Again, however, the Court believes that, despite Plaintiff's claims of legal acumen, he should be provided with an opportunity to amend his pleadings to add details sufficient to meet Rule 9's heightened pleading standard.

II. <u>Merits of Plaintiff's Claims</u>

The Court now considers each of Plaintiff's substantive claims against Defendant on the merits.

    *A. CROA Claim*

Defendant argues Plaintiff fails to allege facts that Defendant qualifies as a "credit repair organization" or that Defendant made false assurances regarding credit repair services as to assert liability under the CROA. To qualify as a "credit repair organization" under the CROA, a person or entity must use interstate commerce or mail to sell, provide, or perform any service, in return for payment with the implied or express purpose of improving a consumer's credit. 15 U.S.C. § 1679(a). To state a claim under the CROA, a Plaintiff must show that said "credit repair organization" engaged in unfair or deceptive advertising and business practices. *See* 15 U.S.C. § 1679(b)(2).

Plaintiff alleges Defendant acted as a credit repair organization pursuant to 15 U.S.C. § 1679(a) as it marketed, advertised, and represented to Plaintiff it would provide services to improve his credit through the Vehicle's purchase with Defendant funding the transaction. (Dkt. 1 at *9-10). Plaintiff specifically alleges Dealer prominently advertised the credit repair services through its billboard stating, "We Fix Credit," and that he relied on the false assurances of credit repair and favorable financing terms to enter the Vehicle purchase and finance agreement. (*Id.* at *10). Finally, Plaintiff asserts Defendant violated 15 U.S.C. § 1679(b) by charging a $2,500.00 advance fee, followed by monthly installment payments, without providing Plaintiff with the promised credit repair, and in fact, causing credit damage through hard credit inquiries, derogatory tradelines, and misreported payments. *Id.*

Defendant, however, argues Plaintiff does not allege any fact tying Defendant to any credit repair marketing, sale, or service it provided to him. (Dkt. 16 at *10). Plaintiff's only specific allegation is that Dealer prominently advertised credit repair services on a billboard stating, "We Fix Credit." (*Id.* at *10-11). He does not allege, nor could he, that there is anything on that billboard that identifies Defendant as a provider of this service or otherwise ties Defendant to these alleged services.

The Court agrees with Defendant that Plaintiff did not sufficiently set forth facts that Defendant, a vehicle financing entity, qualifies as a "credit repair organization" that can be held liable under the CROA. The Court also agrees, Plaintiff's allegation that Defendant's $2,500.00 upfront fee followed by installment payments, violated 15 U.S.C. § 1679 (b)'s "Payment in Advance" provision, fails to allege the terms of any credit repair services that Defendant purportedly agreed to provide. Because Plaintiff's Complaint, as it stands, fails to sufficiently allege Defendant acted as a credit repair organization or that Defendant made false representations as to trigger liability under the CROA, the Court dismisses his CROA claim.

### B. FCRA Claim

Defendant also argues the Court should dismiss Plaintiff's FCRA claim because Plaintiff failed to allege that he filed a requisite dispute with any consumer report agency for recovery under the FCRA. The FCRA imposes obligations on consumer reporting agencies and entities that use consumer reports, aiming to promote accuracy, fairness, and privacy in the collection and use of consumer information. 15 U.S.C. § 1681. These obligations are triggered only when the furnisher receives notice of a dispute from a consumer reporting agency—not from the consumer directly. *See Freeman v. Ocwen Loan Servicing*, LLC, 113 F.4th 701, 706 (7th Cir. 2024).

Plaintiff alleges Westlake willfully and/or negligently reported false, incomplete, and inaccurate information to credit reporting agencies consisting of delinquent payments and default on the Vehicle loan, despite Plaintiff's remitting payments, disputing the contract terms, and lawfully

rescinding the agreement upon discovering fraud. (Dkt. 1 at*11). Plaintiff further alleges Westlake failed to conduct an adequate investigation, failed to provide accurate updates, and continued to report the false information after receiving Plaintiff's disputes directly or from the credit reporting agencies. (*Id.*).

The Court agrees with Defendant that Plaintiff's current allegations do not include sufficient facts showing Defendant's received notice of a dispute from a consumer reporting agency to trigger Defendant's obligations under the FCRP. Without this condition precedent, Plaintiff cannot claim Defendant failed to adequately investigate any "false information" it did not have notice of.

Because Plaintiff failed to allege he followed the necessary steps to trigger Defendant's obligations under the FCRA, the Court dismisses his FCRA claim.

### C. ICFA and Related Fraud Claims

Next, Defendant moves to dismiss Plaintiff's ICFA and related fraud claims because his allegations do not meet Rule 9(b)'s heightened pleading standard. The ICFA, 815 ILCS 505/1., is a regulatory statute designed to protect consumers, borrowers, and business persons from fraud, unfair methods of competition, and other unfair and deceptive business practices. *Kahn v. Walmart*, 107 F.4th 585, 597 (7th Cir. 2024). To prevail on a claim under the ICFA, a plaintiff must establish: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the occurrence of the unfair or deceptive practice during a course of conduct involving trade or commerce; and (4) that the defendant's conduct proximately caused actual damages to the plaintiff. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). Because Plaintiff's ICFA and related claims are based in fraud, they are also subject to Rule 9's heightened pleading standard that requires a party alleging fraud to "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b).

Plaintiff alleges Defendant made false representations to him regarding credit improvement, engaged in unauthorized telemarketing calls, forged his electronic signature on the financing document, and wrongfully repossessed the Vehicle after he had rescinded the contract and terminated Defendant's security interest. (Dkt. 1 at *13-14). In response, Defendant argues that Plaintiff did not sufficiently allege with specificity a deceptive or unfair practice and cannot allege Defendant engaged in unauthorized telemarketing calls because Plaintiff consented to receiving the calls at issue. (*See* Dkt. 16 at *15-17). Further, Defendant argues Plaintiff did not sufficiently allege specific facts to sustain a claim for forgery or identity theft and that Plaintiff's belief that he was entitled to retain the Vehicle free and clear of Defendant's security lien, after he "rescinded" the financing agreement, contradicts basic contracting principles which would require the Plaintiff to relinquish any rights he had to the vehicle. (*See id.* at *18-19).

The Court agrees with Defendant that Plaintiff's fraud claims, as they stand, do not meet the heightened pleading standard outlined in Rule 9 and addresses Plaintiff's pleading deficiencies in turn: first, as explained above, Plaintiff's sole fact alleging Dealer misrepresented that it will improve his creditworthiness through a billboard stating "We Fix Credit," does not tie Defendant to such a statement or allege specific credit repair services Defendant offered, how much they would cost, over what period of time, or the intended result. Second, Plaintiff does not address Defendant's assertion that Plaintiff's Retail Installment Contract and Security Agreement ("RISK"), includes an express statement that Defendant may "make calls and send text messages to [Plaintiff] using prerecorded/artificial voice messages or through the use of an automatic dialing device…in connection with your account, contradicting his argument that such phone calls were unauthorized or unlawful. Third, Plaintiff does not address Defendant's likely assertion that the $2,500 and monthly installment payments were the payments for the Vehicle's purchase, as opposed to the price remitted for credit repair services. Fourth, Plaintiff fails to provide who specifically forged his name, when that

11

person forged it, where they forged it, and importantly fails to allege that Defendant was even present at the time he purchased the Vehicle. Finally, Plaintiff's claim that Defendant illegally repossessed the vehicle, contradicts his assertion that he rescinded his agreement, since doing so would mean he forfeited possession of the vehicle.

Because Plaintiff does not state with particularity the circumstances constituting fraud to adhere to the pleading requirements of Rule 9(b), the Court dismisses his claims in fraud.

### D. Conversion Claim

Defendant moves to dismiss Plaintiff's conversion claim, arguing he did not assert any right to possession of the vehicle after he "rescinded" the financing agreement. To state a claim for conversion under Illinois law, a plaintiff must allege: (1) a right to the property; (2) an absolute and unconditional right to the immediate possession of that property; (3) that he has made a demand for possession; and (4) that a defendant wrongfully and without authorization assumed control, ownership, or dominion over the property. *Loman v. Freeman*, 229 Ill.2d 104, 127, 890 N.E.2d 446 (2008); *see also Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005).

Defendant argues Plaintiff cannot assert he had any rights to the Vehicle or an unconditional right to the Vehicle's immediate possession if he rescinded the finance agreement. (Dkt. 16 at *20). The Court agrees with Defendant. Plaintiff cannot maintain a conversion claim, as rescission requires both parties to be restored to their status quo. *See Nat'l Jockey Club v. Ganassi*, 740 F. Supp. 2d 950, 968 (7th Cir. 2010) (stating under contracting principles, once a contract is rescinded, the parties go back to the status they held before the contract was made.). If Plaintiff "rescinded" the agreement, he no longer had a legal right to retain the vehicle, meaning Defendant's repossession of the car remained lawful.

Accordingly, the Court dismisses Plaintiff's conversion claim.

### E. Fraudulent Inducement Claim

12

Defendant moves the Court to dismiss Plaintiff's fraudulent inducement claim, arguing it does not meet the heightened pleading standard of Rule 9(b). In Illinois, fraudulent inducement requires proof of five elements: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003).

Defendant asserts, and the Court agrees, that Plaintiff fails to satisfy the necessary heightened pleading standard for fraudulent inducement because he did not allege that Defendant specifically made a representation of a material fact that it knew or believed to be false. As explained above, Plaintiff's generic assertion that Dealer's billboard misrepresented a material fact and made false promises of fixing credit, does not allege with particularity that Defendant, that was not present at the purchase, made a false statement or induced the Plaintiff to purchase his Vehicle. Again, the Court dismisses his claim.

### F. TCPA Claim

Next, Defendant contends Plaintiff cannot state a TCPA claim because he consented to receive the communications at issue in his RISC. Under the TCPA, the use of an automated telephone dialing system is only permitted upon the prior express consent of the recipient. 47 U.S.C. § 227(b)(1)(A).

As explained in the Courts reasoning above, denying Plaintiff's claims in fraud, Plaintiff's TCPA claim also cannot survive since Plaintiff signed an express agreement allowing Defendant to "make calls and send text messages to [Plaintiff] using prerecorded/artificial voice messages or through the use of an automatic dialing device." Accordingly, the Court dismisses his TCPA claim as currently pled.

### G. UCC § 9-609 and Breach of Peace Claims

13

Defendant next argues that Plaintiff's UCC and breach of peace claims should be dismissed as improper. § 9-609, or 810 ILCS 5/9-609 (adopting UCC § 9-609), permits a secured party to take possession of the collateral and "require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties." U.C.C. § 9-609(a), (c). In addition, a breach of the peace involves conduct during a repossession that disrupts public order or creates alarm. *See Sroga v. Weiglen*, 649 F.3d 604, 606 (7th Cir. 2011).

Plaintiff argues Defendant violated UCC § 9-609 by repossessing the Vehicle without a valid security interest, providing the required notice, or following lawful procedures. (Dkt. 1 at*19). Plaintiff further alleges that a secured party may only repossess collateral without judicial notice if it has a present and enforceable right to possession and does so without breaching the peace. (*Id.*). Defendant, by contrast, argues Plaintiff erroneously believes that after he allegedly "rescinded" his contract, that Defendant needed to provide judicial notice to Plaintiff of its repossession when it did not destroy public order or tranquility during the repossession. (*See* Dkt. 34 at *6-7).

The Court agrees with Defendant and accordingly dismisses Plaintiff's § 9-609 and breach of peace claims. Under 810 ILCS 5/9-609, a secured party may repossess collateral without judicial process if the repossession is conducted without a breach of the peace. Because as previously stated, rescission restores the parties to their pre-contractual positions, Plaintiff forfeited his interest in the vehicle upon rescission. In addition, a breach of the peace involves conduct that disrupts public order or creates alarm. *See Sroga*, 649 F.3d at 606. None of the facts allege that Defendant's repossession disrupted public order or created alarm. Accordingly, the Court also dismisses Plaintiff's UCC § 9-609 and breach of peace claims.

### H. TILA Claim

Next, Defendant moves to dismiss Plaintiff's TILA claim because he fails to allege any facts detailing how Defendant concealed or misrepresented the loan's material terms, what the terms were supposed to be, and what terms were actually provided. TILA requires that all retail installment contracts provide accurate disclosures. *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283, 285 (7th Cir.1997). TILA also mandates certain disclosures, including the contractual APR, must be in writing 15 U.S.C. § 1638(a)(4). The regulations further explain that the disclosures must "reflect the terms of the legal obligation of the parties" and must be given before the "consumer becomes contractually obligated on a credit transaction." 15 U.S.C. § 1638(c); *Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 767 (7th Cir. 2000).

Plaintiff alleges Defendant violated TILA by failing to provide him with clear and conspicuous disclosures and that Defendant actively concealed or misrepresented the loan's terms by failing to explain the high interest rate, hidden fees, and financial consequences of the transaction. (Dkt. 1 at *23). Defendant, by contrast, argues that Plaintiff's conclusory allegations fail to provide any substantive facts supporting his claim outside of reciting statutory language. (Dkt. 16 at *27).

Again, the Court agrees with Defendant. The RISC provided by Defendant contradicts Plaintiff's claim he did not receive the material disclosures at issues because the RISC explicitly includes a "TILA Disclosure." Accordingly, without additional facts contesting that Defendants provided Plaintiff with this disclosure or material terms, the Court dismisses Plaintiff's TILA claim.

    I. *Alternative Theories of Liability*

Next, Defendant argues Plaintiff fails to state a claim under his three alternative theories of liability: (1) negligence; (2) breach of contract; and (3) unjust enrichment. The Court addresses each alternative theory of liability in turn.

        1. *Negligence Claim*

Plaintiff alleges Defendant acted negligently by failing to exercise the reasonable care expected in handling his financial transaction, including ensuring that Plaintiff fully understood and consented to the terms of the finance agreement. (Dkt. 1 at *25). To state a negligence claim in Illinois, a plaintiff must show that (1) defendant owed a duty of care to plaintiff, (2) defendant breached that duty; and (3) defendant's breach was the proximate cause of plaintiff's injuries. *Cosgrove v. Commonwealth Edison Co.*, 315 Ill. App. 3d 651, 654, 734 N.E.2d 155 (2000); *see Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010).

Defendant argues that Plaintiff does not allege any facts that would support an extra-contractual duty between him and Defendant. The Seventh Circuit has consistently held that a creditor does not generally owe a fiduciary duty to a debtor in an arm's-length transaction. *Miller v. American Natl Bank & Trust Co.*, 4 F.3d 518, 520 (7th Cir. 1993). Because an arm's-length relationship between a vehicle creditor and customer does not create an extra-contractual, fiduciary duty, the Court dismisses Plaintiff's negligence claim.

### 2. Breach of Contract Claim

Alternatively, Plaintiff alleges Defendant breached the implicit and explicit terms of any agreements with Plaintiff by failing to provide the services and benefits promised, including the credit repair and favorable financial terms. (Dkt. 1 at *25). To adequately plead a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resulting injury to the plaintiff. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199, 721 N.E.2d 605 (1999); *Spitz v. Proven Winners North America, LLC*, 759 F.3d 724, 730 (7th Cir. 2014).

Again, Defendant argues Plaintiff fails to satisfy any of the elements to state a claim. Specifically, Defendant asserts: Plaintiff fails to identify a written contract, or set forth the specific

terms satisfying the elements of contract formation. Importantly, Plaintiff alleges there is no agreement because the deal was the result of fraud and he rescinded it.

The Court agrees with Defendant that Plaintiff cannot maintain a breach of contract claim while simultaneously asserting the parties do not have a valid and enforceable agreement. Plaintiff's own position appears to be that no enforceable contract exists since he claims to have rescinded the agreement. Accordingly, the Court dismisses his breach of contract claim.

### 3. Unjust Enrichment Claim

Next, Plaintiff alleges that Defendant has been unjustly enriched by retaining the benefits and profits generated from its actions without providing the intended or agreed-upon services. (Dkt. 1 at *25). In Illinois, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160, 545 N.E.2d 672, 679 (1989); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). What makes the retention of the benefit unjust is often due to some improper conduct by the defendant that usually forms the basis of another claim against the defendant in tort, contract, or statute. *See, e.g., Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir.2007). So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, accordingly, unjust enrichment will stand or fall with the related claim. *Id.*

Because Plaintiff's unjust enrichment claim rests on the same improper conduct alleged in his fraud claims that the Court deemed insufficient, the Court also dismisses his unjust enrichment claim.

### A. RICO Claim

Finally, Defendant moves the Court to dismiss Plaintiff's RICO claim because Plaintiff fails to meet his pleading burden. To state a RICO claim, a plaintiff must allege "racketeering activity"

from an exhaustive list of multiple federal and state criminal offenses, 18 U.S.C. § 1961(1), and must set forth facts detailing a pattern of such activity, which by law, requires at least two acts of racketeering activity committed within a ten-year period. *See* 18 U.S.C. § 1961(5); *see H.J. Inc. v. Northwestern Bell Tel. Co.*, 109 S. Ct. 2893 (1989).

Plaintiff alleges Defendant engaged in a pattern of racketeering through the commission of multiple predicate acts that include: (1) using the United States Postal Service and private or commercial interstate carrie[r]s to send fraudulent communications regarding credit repair capabilities and financial terms; (2) using interstate wire communications to misrepresent vehicle financing terms and credit repair services to induce Plaintiff into financial transactions based on false premises; (3) conducting and participating, directly or indirectly, in the conduct of the enterprise's affairs,…demonstrating a common purpose of fraud. (Dkt. 1 at * 28-29).

Defendant argues these conclusory allegations do not specify which Defendant committed the prohibited acts, what the prohibited act were, where the prohibited acts took place, or how the prohibited acts were implemented. Defendant further argues Plaintiff fails to allege that Defendant engaged in at least two acts of racketeering activity within a 10-year period. (Dkt. 16 at *32).

Because the alleged predicate acts involve fraud, Plaintiff is subject to the heightened pleading requirements of Rule 9(b). Plaintiff still fails to allege with particularity the who, what, when, where, and how of the purported fraudulent conduct. For this reason, the Court agrees with Defendant that Plaintiff's pleadings are merely conclusory, failing to specify with any facts how Defendant used male or wire communications to conduct a criminal enterprise, how it misrepresented vehicle financing terms, or any other purported racketeering activity Defendant conducted within the 10-year period to sustain a RICO claim. Accordingly, the Court dismisses this claim.

**CONCLUSION**

For these reasons, the Court grants Defendant's Motion on all counts of Plaintiff's Complaint [16]. The Court dismisses Plaintiff's conversion, UCC, breach of peace, negligence, breach of contract, and RICO claims, with prejudice. Plaintiff is granted leave to amend his Complaint as to the CROA, FCRA, ICFA, TCPA, TILA, unjust enrichment, and related fraud claims, within 30 days if he has a good faith basis for believing he can cure the pleading deficiencies identified in this opinion. If Plaintiff does not file his amended complaint within 30 days from the date of this Order, Plaintiff's case will be dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 10/14/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge