**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAMES THOMPSON,             )
                                      )
            Plaintiff,        )
                                      )  Case No. 1:25-cv-03080
            v.             )
                                      )  Judge Sharon Johnson Coleman
WESTLAKE SERVICES, LLC DBA    )
WESTLAKE FINANCIAL, et al.,     )
                                      )
            Defendants.    )

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff, James Thompson ("Plaintiff"), filed a Complaint (Dkt. 1) against Defendant Westlake Services, LLC dba Westlake Financial ("Westlake") and Bulldog Recovery aka Madd Dog Recovery ("Bulldog") (collectively, "Defendants") alleging Defendants engaged in a coordinated to fraudulently induce Plaintiff into purchasing a used 2018 Toyota Sienna, VIN 5TDJZ3DC2JS191404 (the "Vehicle"). On October 14, 2025, this Court entered a Memorandum Opinion and Order ("Order") (Dkt. 49) granting Westlake's First Motion to Dismiss Plaintiff's Complaint, (Dkt. 16), dismissing Plaintiff's conversion, UCC, breach of peace, negligence, breach of contract, and Racketeer Influenced and Corrupt Organizations ("RICO") claims with prejudice, but providing Plaintiff with leave to amend his remaining Credit Report Organizations Act ("CROA"), Fair Credit Reporting Act ("FCRA"), Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), Telephone Consumer Protection Act ("TCPA"), Truth in Lending Act ("TILA"), unjust enrichment, and related fraud claims, within 30 days if he could cure the pleading deficiencies identified in the Court's Opinion. (Dkt. 49 at *19.)

On November 13, 2025, Plaintiff filed his First Amended Complaint ("Amended Complaint") (Dkt. 51) seeking damages for the following causes of action: (1) violation of the CROA, 15 U.S.C. §§

1

1679 et seq.; (2) violation of the FCRA, 15 U.S.C. §§ 1681 et seq.; (3) violation of the TCPA, 47 U.S.C. § 227(b); (4) violation of the TILA, 15 U.S.C. §§ 1601 et seq.; (5) violation of the Federal Odometer Act, 49 U.S.C. §§ 32701, et seq.; (6) violation of the FTC Holder Rule; (7) violation of the ICFA, 815 ILCS 505/2; (8) common law fraudulent inducement; (9) conversion; and (10) violation of the Uniform Commercial Code ("UCC") § 9-609/wrongful repossession, breach of the peace. Currently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Motion") pursuant to Rules 8, 9, and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendants' Motion [55].

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Plaintiff's Amended Complaint, (Dkt. 51), and are assumed true for purposes of resolving this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Plaintiff is a resident of Cook County, Illinois. Westlake is a corporation engaged in vehicle financing with its principal place of business in California and conducting business in Illinois. Windy City Motors is an Illinois corporation engaged in selling vehicles with its principal place of business in Cook County, Illinois. Bulldog is a corporation engaged in repossession services with its principal place of business in Illinois.

### A. Vehicle Purchase and Finance Transaction

In late 2021, Plaintiff saw a billboard advertisement in Cicero, Illinois for Windy City Motors, stating: "WE FIX CREDIT – WINDY CITY MOTORS – SALES AND SERVICE – BUY TODAY – DRIVE TODAY."



Plaintiff, who had concerns about his credit profile, was intrigued by this offer to "fix" his credit through a car purchase.

Subsequently, on December 29, 2021, Plaintiff visited Windy City Motor's showroom at 2662 N. Cicero Avenue, Chicago, Illinois, where he entered into a vehicle purchase and finance transaction for the Vehicle. Windy City Motors sales personnel carried out the transaction and execution of Plaintiff's installment contract through a salesperson known to Plaintiff as "Eric" and a representative identified as "Zubaida." Plaintiff also alleges an "Unknown Westlake Partner" participated in the transaction by communicating by phone with Windy City Motors during the sale, approving financing, acknowledging that Plaintiff's purchase included credit repair services, and by later affirming the representations through post-sale communications.

Plaintiff alleges that, during this transaction, Eric, Zubaida, and the Unknown Westlake Partner represented the following to Plaintiff:

A. Windy City Motors and Westlake offered a joint credit improvement program;

B. by purchasing and financing the vehicle through them, Plaintiff's credit score would immediately increase;

  C. Westlake would remove or repair existing negative items on Plaintiff's credit reports;

  D. the loan would not be reported in a way that harmed Plaintiff's credit profile;

  E. the vehicle was a one-owner personal-use trade-in, not a fleet or commercial vehicle;

  F. Windy City would promptly repair the malfunctioning passenger-side sliding door and provide missing second-row seats after delivery;

  G. the $2,500 down payment Plaintiff made was for the vehicle and to participate in the credit repair program; and

  H. all documents were standard and Plaintiff did not need to read or review them.

Finally, Plaintiff alleges, Windy City Motor's staff directed Plaintiff to electronically sign finance documents and "affixed Plaintiff's signature or initials [on the finance documents] without pausing for explanation."

## B. Alleged Fraud and "Recission"

After his purchase, Plaintiff learned each of the representations Windy City Motors and Westlake made to Plaintiff were "false or made with reckless disregard of the truth." Specifically, Plaintiff's credit score dropped sharply due to hard inquiries and the addition of a high balance trade line by Westlake; no credit repair occurred; the vehicle was part of a fleet or commercial inventory; and no repairs were made. Concerned about these "misrepresentations," Plaintiff reached out to Westlake repeatedly in early 2022 to inquire about expected "credit repair" services. Between Late January and March of 2022, Plaintiff claims Westlake's "representatives gave Plaintiff inconsistent and evasive answers," initially claiming another department in Westlake handled the credit repair, that the credit improvement would occur after a few months of payments, and making statements such as "keep paying on time and you'll see your score go up." In subsequent conversations, however,

4

Westlake disclaimed responsibility, stating that "their company would only handle information they reported and would not deal with other negative items on Plaintiff's credit and that any further credit repair services 'would be supplied by the dealership.'" When Plaintiff contacted the dealership, its staff also evaded his questions about credit repair services.

By March of 2022, Plaintiff's credit score plummeted by over 100 points, Plaintiff lost a pre-approved credit card, and his creditworthiness deteriorated with lenders. Plaintiff also alleges the anxiety about his worsening credit and the mounting dispute with Defendants led to loss of sleep and physical discomfort, as well as emotional distress. After failing to pay his car note over numerous months, Plaintiff began receiving "harassing automated calls" from Westlake. Westlake made calls to Plaintiff's cellular phone on the following dates and times: 1-24-2022 at 11:35 am; 1-25- 2022 at 11:18 am; 1-27-2022 at 10:57 am; 1-28-2022 at 2:21 pm; 1-29-2022 at 12:42 pm and 5:46 pm; 1-31-2022 at 11:36 am; 2-1-2022 at 11:13 am and 2:22 pm; 2-3-2022 at 10:50 am and 2:03 pm; 2-4-2022 at 10:29 am, , and 1:41 pm; 2-5-2022 at 11:07 am and 1:36 pm; 2-8-2022 at 10:38 am, 1:58 pm, and 4:26 pm; 2-9-2022 at 12:04 pm and 5:00 pm; and 2-10-2022 at 11:26 am. Additionally, calls were made from the number 877-557-5755 on the following dates and times: 1-27-2022 at 8:28 am; 1-28- 2022 at 1:40 pm twice in one minute; 1-31-2022 at 8:30 am and 11:03 am; 2-1-2022 at 3:00 pm; 2-2-2022 at 9:25 am and 1:23 pm; 2-7-2022 at 10:04 am; and 2-10-2022 at 1:18 pm and 3:43 pm. When Plaintiff answered some of these calls, he experienced a distinct pause of several seconds before a live representative came on the line. He also received voicemails that appeared to be pre-recorded messages from Westlake.

Plaintiff sent "formal written notice" to Defendants on April 1, 2022, that he was revoking his acceptance of the Vehicle, based on damage to his credit, Defendants' failure to provide promised services, and the "harassing" phone calls. Plaintiff also indicated that he planned to return the vehicle to Windy City Motors and that he would like to be refunded for the payments he made. He notified

the Defendants that, in the alternative, he was withholding further payments due to Windy City Motor's breaches, and informed Westlake that "the damages caused by WCM's breach far exceeded any remaining amount on the contract, and thus he was justified in withholding performance." Plaintiff took the position that his contract was thus voided, and that "his security interest in the vehicle was superior to Westlake's since Westlake never fulfilled its obligations or returned the monies paid."

When he did not receive a response to his "recission," in a letter dated June 1, 2022, Plaintiff asked Westlake to agree in writing not to repossess the vehicle or report negatively to credit bureaus while this "dispute was pending," warning that otherwise he would seek a restraining order. He also stated in the letter that any forcible repossession would "be unlawful conversion and met with appropriate force, as it would breach the peace under Illinois law."

### B. Repossession by Bulldog

Plaintiff stopped making payments at least as early as April 1, 2022, and Westlake categorized him as "delinquent." In or around May 2022, Westlake mailed Plaintiff a "Notice of Default", asserting that he was behind on payments. Plaintiff responded by letter that the default notice was "legally insufficient" given his prior revocation of acceptance and repeated that he refused to make future payments. Soon thereafter, Westlake reported to credit bureaus that Plaintiff's account was in default/collections. Westlake then moved forward with repossessing the vehicle. On or about July 17, 2024, Westlake hired Bulldog to repossess the vehicle. According to Plaintiff, Bulldog took the vehicle "stealthily," without Plaintiff's consent. Following the repossession, Westlake, either directly or through Wisconsin Services Corporation aka Manheim Milwaukee, disposed of the vehicle at auction to a third party. Westlake did not provide Plaintiff with notice of the sale or an opportunity to redeem the Vehicle.

Plaintiff later filed the present action, asserting that Defendants, through "false promises," "cheated him out of money, wrecked his credit, and when he tried to assert his rights, they double-downed with unlawful collections tactics (negative credit reporting and an extrajudicial repossession), warranting relief under federal and state statutes."

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

The basic pleading requirement is set forth in Federal Rule of Civil Procedure 8(a)(2), which requires a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require a plaintiff to plead particularized facts, the factual allegations in the complaint must sufficiently raise a plausible right to relief above a speculative level. *Arnett v. Webster*, 658 F.3d 742, 751-52 (7th Cir. 2011). While pro se complaints are construed liberally and held to a less stringent standard than pleadings drafted by lawyers, *id.* at 751, a *pro se* complaint still must provide fair notice of the plaintiff's claims and at least suggest a plausible right to relief. *Killebrew v. St. Vincent Health, Inc.*, 295 Fed. App'x 808, 810 (7th Cir. 2008).

**DISCUSSION**

Defendants move to dismiss all claims, arguing Plaintiff's Amended Complaint is still an impermissible shotgun pleading, fails to allege the requisite specificity for fraud, and fails to state a claim upon which relief can be granted.  (Dkt. 55 at *2.)  The Court addresses each argument in turn.

## I.     Plaintiff's Compliance with Federal Pleading Requirements

### A. *Impermissible Shotgun Pleading*

Defendants first argue, because each count incorporates all preceding facts by reference, the Amended Complaint fails to notify Defendants of the conduct that forms the basis of each claim, making it an "impermissible shotgun pleading."  (Dkt. 55 at *6.)

Courts discourage "shotgun" pleading where "each count incorporate[s] by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged [are] not material to the claim, or cause of action, appearing in a count's heading."  *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001–02 (N.D. Ill. 2011) (Holderman, J.) (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir.2010)).  In its first Opinion, the court agreed with Defendants that Plaintiff's pleading style did not sufficiently provide Defendant with notice of the specific conduct forming the basis of each claim, but gave the Plaintiff leave to amend the complaint, pursuant to Fed. R. Civ. P. 15(a), rather than dismissing the *pro se* Plaintiff's claims based solely on his procedural default.  *See* (Dkt. 49 at *7.)

Defendants now renew their motion to dismiss Plaintiff's complaint as an impermissible shotgun pleading.  Defendants explain, in each of Plaintiff's counts, Plaintiff still incorporates by reference all proceeding paragraphs, despite the Court providing him an opportunity to submit a proper pleading.  *See* (Dkt. 55 at *7.)  Despite this opportunity to amend, Plaintiff continues to commingle different causes of action into each count, some of which contradict each other.  (*Id.* at 7.) For example, Defendants explain, in Count I, Plaintiff alleges a CROA violation and that Defendants

8

acted as a credit repair organization as they marketed, advertised, and represented to consumers they would provide services to improve credit by purchasing vehicles; these allegations were then incorporated into all subsequent counts, despite having nothing to do with Plaintiff's FCRA, ICFA, or TILA claims, evidencing the insufficiency of the pleadings to provide Defendants with proper and clear notice of each claim  (*Id.*)  In response, Plaintiff concedes incorporation by reference can create shotgun pleading issues where it renders counts unintelligible, but argues, here, Plaintiff filed a "detailed 31-page motion addressing each count with specificity.  (Dkt. 62 at *7.)  Plaintiff concludes, because Defendants clearly comprehend each claim sufficiently enough to mount such a substantive defense, dismissal for shotgun pleading, is unwarranted.  (*Id.* at *7-8.)

Notwithstanding its decisions on the merits of Plaintiff's claims, the court agrees with Plaintiff that his Amended Complaint is not so unintelligible that Defendants are without proper notice of the basis of each claim.  "[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011).  However, "[a] district court is not authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (internal quotations and citation omitted) ("[A] a judge should bypass the dross and get on with the case.").  Here, while there is some repetition in Plaintiff's amended complaint, the Court finds that it is not so incoherent or confusing that Defendants cannot decipher the alleged wrongful conflict creating the basis for Plaintiff's claims.  Thus, the Court finds the Amended Complaint is not a "shotgun pleading" that warrants the Court to summarily dismiss the Pleading.

### B.  Compliance with Rule 8

Defendants next argue the Court should dismiss Plaintiff's Amended Complaint for its failure to comply with Rule 8.  (Dkt. 55 at *7.)  Factual allegations in a complaint must sufficiently raise a

plausible right to relief above a speculative level to be compliant with Rule 8. *Arnett*, 658 F.3d at 751-52. In its first ruling, while the Court agreed many of Plaintiff's claims merely recited legal conclusions, despite his claims of legal acumen, the Court reiterated that Plaintiff should have an opportunity to amend his pleadings due to his *pro se* status. *See* (Dkt. 49 at *7.)

In their current Motion, Defendants maintain that Plaintiff's claims are still conclusory, or are based on "information and belief," without requisite factual allegations. (Dkt. 55 at *8). Specifically, Defendants emphasize that the foundation of Plaintiff's assertions against Westlake rest upon the speculative assertion that Defendants were involved in a joint venture with the common purpose of inducing the public to purchase vehicles under the false pretense of credit repair, without sufficient supporting facts for such a claim, warranting dismissal. (*Id.*)

Again, without deciding the merits of Plaintiff's claims, the Court determines the Amended Complaint is not so devoid of factual allegations that his claims for relief are completely implausible. The Court also finds that the length of Plaintiff's complaint, which Defendants take issue with, *see id.* (complaining that Plaintiff's allegations consist of over 140 paragraphs asserting ten causes of action), is irrelevant to Plaintiff's compliance with Rule 8. The Seventh Circuit has made clear that "undue length alone ordinarily does not justify the dismissal of an otherwise valid complaint." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). And where a complaint otherwise "puts the defendant on notice of the [plaintiffs'] claims, dismissal is inappropriate merely because of the presence of superfluous matter[s]." *Id.* In line with this precedent, the Court rejects Defendants' argument that the Complaint does not comply with Rule 8 simply due to aforementioned "irrelevant" allegations or because of its length. The factual allegations in Plaintiff's Amended Complaint, though repetitive and at times conclusory, still provide Defendants with factual allegations that could plausibly state a claim for relief. Accordingly, the Court will not dismiss his claims on Rule 8 grounds.

C. *Compliance with Rule 9*

Defendants next argue that Plaintiff's claims based in fraud should be dismissed for their failure to comply with Rule 9. (Dkt. 55 at *8.) Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). In its first ruling, the Court agreed with Defendants that the initial pleading's use of generic terms such as "dealer's agent," without factual allegations as to what the misrepresentations were, how they were made, and where they were made, did not satisfy Rule 9(b). *See* (Dkt. 49 at *8.)

Defendants argue that Plaintiff's Amended Complaint still fails to satisfy the heightened pleading burden for his ICFA and fraudulent inducement claims. (Dkt. 55 at *8). Defendants explain, Plaintiff's Amended Complaint alleges Windy City Motor's employees made representations during the sale of the Vehicle while discussing on the phone with an "Unknown Westlake Partner." (*Id.* at *9.) Plaintiff fails to state who from Westlake made the misrepresentations to Plaintiff regarding fixing his credit and exactly what those misrepresentations were. (*Id.*) Defendants further emphasize that he merely overheard Westake's misrepresentations through its representatives' phone call with Windy City Motors, without any allegations that Westlake made any representations to him to induce his purchase. (Dkt. 55 at *9-10.)

In response, Plaintiff maintains that his amended pleading satisfies rule 9(b). Plaintiff argues he pleads his ICFA claim with specificity. (Dkt. 62 at *9.) Specifically, Plaintiff alleges WHO made the representations (Eric and Zubaida and an Unknown Westlake Partner participating via telephone); WHAT representations were made (joint credit improvement program, immediate credit score increases, that Westlake would remove or repair negative items on his credit reports, that the loan would not harm his credit profile, and that the Vehicle was a one-owner personal-use trade-in);

WHEN the representations were made (December 29, 2021 and between January and March of 2022); WHERE the representations were made (Windy City Motor's showroom at the time of sale and via telephone post-sale); and HOW the representations were made (in-person and through live telephone calls between Windy City Motors and Westlake that Plaintiff overheard and through direct telephone calls from Westlake agents to Plaintiff). (*Id.*) As to his ICFA claim, Plaintiff also argues he clearly states Windy City Motor employees and an Unknown Westlake Partner made false representations about credit repair services to induce him into the transaction, that Westlake knew or should have known of the misrepresentations because its agent participated in the live telephone calls during the sale, and that Westlake ratified the misrepresentations through subsequent communications. (*Id.* at *11.)

Again, without deciding the merits of his claims, the Court determines that Plaintiff's amended pleading now complies with Rule 9. In the Seventh Circuit, a plaintiff who provides a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud, satisfies Rule 9(b). *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.1992). While a complaint's fraudulent scheme should include the "who, what, when, where and how," *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir.1990), individualized information about the role of each defendant in the fraud is not necessary, when such information is uniquely within defendants' knowledge." *Vicom v. Harbridge Merchant Servs.*, 20 F.3d 771, 778 n. 5 (7th Cir.1994). While Plaintiff's Amended Complaint does not fully detail the precise circumstances of Westlake's alleged fraudulent conveyances, it sufficiently alleges fraud for the purposes of Rule 9(b) by giving Defendants adequate notice of their purported role in the scheme, regardless of the strength of those allegations.

Accordingly, the Court will not dismiss Plaintiff's claims for failure to meet federal pleading requirements.

## II.    Merits of Plaintiff's Claims

Having determined Plaintiffs Amended Complaint meets federal pleading requirements, the Court now considers the merits of Plaintiff's substantive claims against Defendants.

### A. CROA Claim

Defendants argue the Court should dismiss Plaintiff's CROA claim because it fails to allege facts to support that Westlake is a "credit repair organization" that can be liable under the Act. (Dkt. 55 at *11.) To qualify as a "credit repair organization," a person or entity must use interstate commerce or mail to sell, provide, or perform any service, in return for payment with the implied or express purpose of improving a consumer's credit. 15 U.S.C. § 1679(a). To state a claim under the CROA, a Plaintiff must show that said "credit repair organization" engaged in unfair or deceptive advertising and business practices. *See* 15 U.S.C. § 1679(b)(2). Those prohibited practices include a "Payment in Advance" provision, which states: "no credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

In its first ruling, the Court agreed with Defendants that Plaintiff did not sufficiently set forth facts that Westlake, a vehicle financing entity, qualifies as a "credit repair organization" that can be held liable under the CROA. (Dkt. 49 at *9) The Court also determined that Defendant's $2,500.00 upfront fee followed by installment payments, was more plausible that the payment was for the Vehicle itself. (*Id.*). In their current Motion, Defendants maintain that Plaintiff's amended pleading still fails to allege facts to support that Westlake is a "credit repair organization," and importantly fails to allege any fact tying Westlake to any credit repair marketing, sale, or service it provided to him. (Dkt. 55 at *11.) Importantly, Defendants argue, Plaintiff's only specific allegation, that Windy City Motors prominently advertised credit repair services on a billboard stating, "We Fix Credit," does not identify Westlake as a provider of this service or otherwise link Westlake to such services. (*Id.*) Defendant further emphasizes that Plaintiff does not allege that Westlake, or any Westlake

representative, was present when he purchased the Vehicle; Plaintiff merely alleges that Windy City Motors and Westlake engaged in "live conversations" which he "overheard" during the transaction, evidencing that Westlake did not make any misrepresentations to him, a passive listener overhearing a conversation. (*Id.* at 11-12.) Defendants drive their point further by arguing that Plaintiff does not, and cannot, allege the terms of any credit repair services, provide any written credit repair contract, and does not allege an oral agreement, making clear that Plaintiff failed to state a claim. (*Id.* at 12.)

In his response, Plaintiff seemingly concedes that Westlake is not a credit repair organization, but, relying on a Ninth Circuit Opinion, argues the Court should impose CROA liability under an aiding and abetting theory since Westlake facilitated or substantially assisted credit repair promises made by Windy City Motors. (Dkt 65 at *4) (citing *In FTC v. Gill*, 265 F.3d 944, 959 (9th Cir. 2001)). Plaintiff then asserts that Westlake's decision to accept payments in connection with the Vehicle transaction, in light of Windy City Motor's promises, suffices to survive an aiding and abetting theory.

"Courts in this District are split as to whether an entity needs to be a credit repair organization to be subject to the prohibitions of the CROA." *Hurley v. Navy Fed. Credit Union*, 22 C 1545, 2024 WL 4818720, at *4 (N.D. Ill. Nov. 18, 2024) (collecting cases) (Alonso, J.). Even if the CROA is applicable to Westlake, however, Plaintiff's conclusory allegations that Westlake ratified credit repair services by accepting payments on the Vehicle's contract, does not suffice to establish that Westlake violated the CROA. In fact, Plaintiff's allegations make clear that any "misrepresentations" made by Westlake were not to Plaintiff, but to Windy City Motors and merely "overheard" by Plaintiff. Without needing to decide if Westlake can be liable under the CROA, Plaintiff's own allegations, that do not tie Westlake to a single misrepresentation made directly to him, do not suffice to plead an unfair or deceptive practice that is actionable under the CROA.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's CROA claim.

B. *FCRA Claim*

14

Defendants next argue that Plaintiff fails to state an FCRA claim. (Dkt. 55 at *12.) The FCRA imposes obligations on consumer reporting agencies and entities that use consumer reports, aiming to promote accuracy, fairness, and privacy in the collection and use of consumer information. 15 U.S.C. § 1681. These obligations are triggered only when the furnisher receives notice of a dispute from a consumer reporting agency—not from the consumer directly. *See Freeman v. Ocwen Loan Servicing*, LLC, 113 F.4th 701, 706 (7th Cir. 2024).

The Court dismissed Plaintiff's first FCRA claim, agreeing with Defendants that Plaintiff's allegations did not include sufficient facts showing Westlake received notice of a dispute from a consumer reporting agency to trigger any obligations. (Dkt. 49 at *9) The Court held, without this condition precedent, Plaintiff could not claim Westlake failed to adequately investigate any "false information" it did not have notice of.

In their current Motion, Defendants maintain that Plaintiff still fails to allege a more specific time when he filed his dispute with the credit reporting agencies, what the claimed dispute was, that the specific credit reporting agency sent notice to Westlake; or that Westlake received a notice. (Dkt. 55 at *13.) Defendant argues Plaintiff's barebone allegations that he reported a dispute to credit reporting agencies, without any proof of such report and in the absence of any facts that demonstrate Westlake received notice of Plaintiff's dispute in front of a credit reporting agency, are insufficient to state a claim. (*Id.*) Furthermore, Defendants argue, Plaintiff's assertion that Westlake's reporting was inaccurate based on his alleged "rescission," is meritless. (*Id.* at *14) (citing *Lute v. TransUnion, LLC*, 18-CV-07451, 2022 WL 971877, at *4 (N.D. Ill. Mar. 31, 2022) (Coleman, J.) ("[A] furnisher does not report incomplete or inaccurate information within the meaning of a § 1681s-2(b) simply by failing to report a meritless dispute, because reporting actual debt without noting that it is disputed is unlikely to be materially misleading.").

15

In his response, Plaintiff again concedes that a furnisher's duty to investigate is only triggered by notice from a consumer reporting agency but argues a furnisher is not insulated from liability for reporting patently inaccurate or materially misleading information. (Dkt. 65 at *5-6) (citing *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701, 707 (7th Cir. 2024)). Accordingly, Plaintiff asserts Westlake's continued reports of delinquency, despite its knowledge of the dispute over the contract's validity, was an FCRA violation. (Dkt. 65 at *6.).

As an initial matter, it is undisputed that Westlake did not receive notice from a credit reporting agency to trigger obligations under § 1681s–2(b), meaning the only avenue for Plaintiff to maintain his claim is through allegations that Westlake reported materially misleading information to credit bureaus. Unfortunately for Plaintiff, however, his assertion to Westlake that he rescinded his contract, without any facts supporting legal recission, does not come close to what is required to trigger obligations under the FCRA. It is only the failure to report a bona fide dispute, or one that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b). *Lute,* 2022 WL 971877, at *4. Westlake reported a valid debt, the delinquent credit line for Plaintiff's vehicle, and was not required to report to credit agencies that Plaintiff personally disputed the transaction due to his purported legal recission. The Court agrees with Defendants that Westlake's reporting was factually accurate and did not trigger obligations under the FCRA.

Because Westlake's obligations were not triggered under § 1681s-2(b), because Plaintiff's recission was not legally sound, and because Westlake truthfully reported his delinquency, Plaintiff's FCRA claim fails.

### C. TCPA Claim

Defendants next argue Plaintiff's TCPA claim should be dismissed. (Dkt. 55 at *15) Under the TCPA, the use of an automated telephone dialing system is only permitted upon the prior express consent of the recipient. 47 U.S.C. § 227(b)(1)(A). The statute defines "an autodialer as equipment

which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers." 47 U.S.C. § 227(a)(1). In its initial ruling, the Court held that Plaintiff's TCPA claim could not survive since Plaintiff signed an express agreement allowing Defendant to "make calls and send text messages to [Plaintiff] using prerecorded/artificial voice messages or through the use of an automatic dialing device." (Dkt. 49 at *13.)

In its Motion, among other things, Defendants renew their argument that Plaintiff consented to receiving Westlake's calls. Specifically, Plaintiff's Retail Installment Sales Contract ("RISC") contains the following provision: Telephone Monitoring and Calling. … In order for us to service the account or to collect any amounts you may owe, … you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you. (Dkt. 55 at *17). Plaintiff, in response, argues he revoked any consent to such calls during a December 29, 2021, telephone conversation with a Westlake agent. (Dkt. 62 at *8.)

Any such argument that Plaintiff revoked consent to receive such calls, is implausible in light of his own pleadings. Plaintiff asserts he revoked consent for calls the day he purchased the Vehicle, contradicting his own allegations that he did not speak directly with a Westlake agent that day. Plaintiff additionally fails to allege any concrete facts supporting such revision. Without such proof, his claim cannot survive. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's TCPA claim.

### D. TILA Claim

Defendants next assert that Plaintiff's TILA claim is meritless. (Dkt. 55 at *18.) TILA requires that all retail installment contracts provide accurate disclosures, such as the contractual APR, in writing. *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283, 285 (7th Cir.1997); 15 U.S.C. §

1638(a)(4). The regulations further explain that the disclosures must "reflect the terms of the legal obligation of the parties" and must be given before the "consumer becomes contractually obligated on a credit transaction." 15 U.S.C. § 1638(c); *Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 767 (7th Cir. 2000). The Court granted Defendants' first motion to Dismiss Plaintiff's TILA claim because the RISC provided by Defendant explicitly included a "TILA Disclosure," contradicting Plaintiff's claim he did not receive the material disclosures at issue.

In their Motion, Defendants reassert that Plaintiff received the TILA disclosure, which subjects his claim to dismissal. (Dkt 55 at *19.) (citing *Rojas v. X Motorsport, Inc.*, 710 F. App'x 708, 710 (7th Cir. 2018) (rejecting alleged TILA violation when plaintiff received all mandated financing information and failed to present evidence of inaccuracy)). Additionally, Defendants argue that the Court should independently dismiss Plaintiff's claim because TILA is subject to a one-year statute of limitations that has now expired. (Dkt 55 at *19.) Defendants finally argue, any effort by the Plaintiff to toll this statute of limitations is misplaced, since Plaintiff's own allegations admit that he received all the finance documents that he did not demonstrate any due diligence to further review. (*Id.* at *20.) In response, Plaintiff alleges he was prevented from reviewing the finance documents and that he was not provided with copies of all the disclosures until later, supporting the propriety of equitable tolling. (Dkt. 62 at *9.)

Again, Plaintiff's own pleading contradicts his argument that his TILA claim should be equitably tolled. As an initial matter, Plaintiff fails to demonstrate any efforts to review the TILA disclosure after his purchase, does not allege that he requested copies of such documents, or that any Defendants failed to provide him with such documents at the purchase or later on. Additionally, even if the Court were to accept Plaintiff's argument that Defendants concealed a TILA violation, his Amended Complaint is devoid of any claim that his TILA disclosures were inaccurate; or that Westlake, as the RISC's assignee, was aware of any inaccuracies. A creditor can only be liable for a

TILA violation if an accuracy is apparent on the face of the disclosure statement, such as an instance when (1) a disclosure can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) where a disclosure does not use the terms required. *See* 15 U.S.C. § 1641(a); *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 692–93 (7th Cir. 1998). Defendant's claim independently cannot survive absent any allegations of inaccuracies on the face of the TILA disclosure. Accordingly, the Court dismisses Plaintiff's TILA claim.

### E. *Federal Odometer Act Claim*

Defendants next argue Plaintiff's Odometer Act Claim is unsupported. (Dkt. 55 at *21.) The Federal Odometer Act requires a person transferring ownership of a motor vehicle to provide the transferee with a written "[d]isclosure of the cumulative mileage registered on the odometer." 49 U.S.C. § 32705(a)(1)(A). The Federal Odometer Act creates a civil cause of action against any person who violates that provision "with intent to defraud." *Id.* § 32710(a). To prevail on a claim of odometer fraud, a plaintiff "must demonstrate: (1) a violation of the Act's odometer disclosure requirements (i.e., the providing of an inaccurate odometer reading), and (2) an intent to defraud." Diersen v. Chi. Car Exch., 110 F.3d 481, 487 (7th Cir. 1997). "Based on the intent to defraud requirement, courts have held that Rule 9(b) applies to pleading Odometer Act claims. *Sanchez v. GRS Recovery*, LLC, 24-CV-5519, 2025 WL 2483373, at *2 (N.D. Ill. Aug. 28, 2025) (Cummings, J.).

In their Motion, Defendants argue Plaintiff fails to plead the who, what, when, where, and how, in connection with the purported failure to show him the odometer disclosure and any alleged disclosure of the vehicle's prior fleet history. (Dkt. 55 at *22). Most importantly, Defendants emphasize that Plaintiff's claim cannot survive because he signed an odometer statement disclosing the Vehicle's mileage and because he fails to allege how the mileage was inaccurate. (*Id.*) In response, Plaintiff concedes that the odometer reading on the Vehicle was accurate in number, but takes issue with Windy City Motor's failure to let plaintiff acknowledge the reading on the title. (Dkt. 51 at *23.)

19

Ultimately, because Plaintiff's allegations are deficient to assert liability against Defendants under Rule 9, because Plaintiff signed an odometer statement, and because Plaintiff plainly admits the reading was correct—contradicting any required intent by Westlake, or any party, to defraud him— his claim overwhelmingly fails.

### F. FTC Holder Rule Claim

Defendants next argue Plaintiff's FTC Holder Rule claim should be dismissed. (Dkt. 55 at *22.) The FTC Holder Rule subjects an assignee of a consumer contract to all claims and defenses the debtor/consumer could assert against the seller. 16 C.F.R. 433.2. The rule permits a consumer to maintain an action against the assignee-creditor for a refund of all money paid on account." *Gaddy v. Galarza Motor Sport L.T.D.*, 00 C 3893, 2000 WL 1364451, at *3 (N.D. Ill. Sept. 20, 2000) (Conlon, J.). Consumers cannot obtain affirmative recovery from a creditor, however, unless they have actually commenced payments and received little or nothing of value from the seller." *Costa v. Mauro Chevrolet, Inc.*, 390 F.Supp.2d 720, 736 (N.D. Ill 2005) (Filip, J.). "Caselaw in this district supports the view that substantial failure of performance on the contract is needed." *Id.*

The parties do not dispute that, as the holder of the consumer credit contract, Westlake can be liable for claims against Windy City Motors under the FTC Holder Rule. Instead, Defendants argue Plaintiff cannot maintain his action because he fails to allege that he received little or no value from his contract or that there was any substantial failure of the contract's performance. (Dkt. 55 at *10). Defendants maintain, the intent behind the transaction was the Vehicle's purchase; even if the purported credit repair was an incident to the transaction—which Defendants maintain it was not— Plaintiff received and took possession of the Vehicle. *See Id.* Defendants conclude, because Westlake performed its obligation of funding the Vehicle purchase and servicing the account, Plaintiff cannot maintain his claim. *See Id.* Plaintiff, in response, merely reiterates that he paid $2,500 at the time of his purchase and additional installment payments of roughly $2000, which he should be able to recover

from Westlake since it is the holder of the consumer debt and liable for Windy City Motor's conduct. (Dkt. 51 at *25).

In the present circumstance, Plaintiff cannot maintain his claim. Here, there is no allegation that Plaintiffs was placed in a position where he suffered from a "total failure of performance" from "non-delivery" of the vehicle or from something that can be readily analogized to such a complete non-fulfillment of the contract by the vendor. Short of a showing of substantial nonperformance on the Vehicle contract, the Court will not hold Westlake's failure to provide purported credit services suffices to maintain an FTC Holder Rule claim. *See Costa*, 390 F. Supp. 2d at 737 (holding plaintiff could not maintain an FTC Holder Rule claim based on his inability to develop promised credit history, absent proof of substantial nonperformance on his underlying vehicle contract).

Accordingly, the Court dismisses Plaintiff's FTC Holder Rule claim.

### G. ICFA Claim

Defendants also argue Plaintiff cannot maintain his ICFA claim because he fails to allege a deceptive or unfair act or practice. (Dkt. 55 at *24.) The ICFA, 815 ILCS 505/1., is a regulatory statute designed to protect consumers, borrowers, and businesspersons from fraud, unfair methods of competition, and other unfair and deceptive business practices. *Kahn v. Walmart*, 107 F.4th 585, 597 (7th Cir. 2024). To prevail on a claim under the ICFA, a plaintiff must establish: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the occurrence of the unfair or deceptive practice during a course of conduct involving trade or commerce; and (4) that the defendant's conduct proximately caused actual damages to the plaintiff. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). Because Plaintiff's ICFA and related claims are based in fraud, they are also subject to Rule 9's heightened pleading standard that requires a party alleging fraud to "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b).

In its initial ruling, the Court determined that Plaintiff's ICFA claim did not meet the heightened pleading standard outlined in Rule 9. (Dkt. 49 at *11). Primarily, the Court noted Plaintiff's sole fact alleging Windy City Motors misrepresented that it will improve his creditworthiness through a billboard stating "We Fix Credit," did not tie Westlake to such a statement or allege specific credit repair services Westlake offered, how much they would cost, over what period of time, or the intended result. *Id.*

In their second Motion, Defendants assert the amended pleading is still insufficient because Plaintiff explicitly alleges he only "overheard" "misrepresentations" from an Unknown Westlake Representative, because the "We Fix Credit" sign is not tied in any way to Westlake, and because Plaintiff provides no factual allegations that his vehicle was previously a fleet vehicle. (Dkt 55 at *24.) Defendants also reiterate the plausible inference from Plaintiff's allegations, when compared to the RISC, is that the $2,500 was the down payment for the Vehicle purchase, not that Westlake offered credit repair services for that cost. (*Id.* at *25.) In response, Plaintiff primarily argues that any dispute regarding Westlake's involvement in an unfair practice should be further developed in discovery. (Dkt. 62 at *10-11.)

Ultimately Plaintiff's failure to sufficiently allege a deceptive or unfair act or practice, is fatal to his claim. It is clear from the face of the Amended Complaint that Plaintiff did not, at any point prior to his transaction, interact with any Westlake representative. It is therefore implausible that Westlake committed an unfair or deceptive practice during a course of conduct involving trade or commerce or that its conduct proximately caused actual damages to Plaintiff. Plaintiff's barebone, and contradictory allegations, do not suffice to plead fraud with particularity. Therefore, the Court dismisses his ICFA claim.

*H. Fraudulent Inducement Claim*

Relatedly, Defendants also argue Plaintiff fails to satisfy the fraudulent inducement elements as well as the necessary heightened pleading standards to maintain his fraudulent inducement claim. (Dkt. 55 at *27.) In Illinois, fraudulent inducement requires proof of five elements: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003).

In their Motion, Defendants reemphasizes that Plaintiff cannot allege that Westlake made a representation of a material fact that it knew or believed to be false; Plaintiff's allegations that an Unknown Westlake Partner approved financing after direct communications with Windy City Motors while Plaintiff was present, does not suffice to state his claim when Plaintiff does not allege that Westlake knew Plaintiff was listening to or present for any of the conversation—which would be necessary in order for Westlake to specifically make a misrepresentation in order for Plaintiff to rely upon it. (Dkt. 55 at *27-28.)

In response to Defendants' arguments, Plaintiff states that his allegations that Westlake worked in coordination with Windy City Motors on a conversation he overheard, should suffice to survive a motion to dismiss. (Dkt. 62 at *11.) Unfortunately for Plaintiff, however, and similar to the Court's reasoning for dismissing his ICFA claim, Plaintiff's allegations, on their face, cannot state a claim for fraudulent inducement. Primarily because Plaintiff's own allegations state Westlake was not present at the purchase and that none of its representatives spoke to Plaintiff, it is implausible that Westlake made a false statement to induce Plaintiff to purchase the Vehicle. For these reasons, Plaintiff's fraudulent inducement claim cannot survive.

   I.   *Conversion, UCC, and Breach of Peace Claims*

23

Finally, the Court will not address the merits of Plaintiff's claims it already dismissed with prejudice. *See* (Dkt. 49 at *19).

## CONCLUSION

For these reasons, the Court grants Defendant's Motion to Dismiss all counts of Plaintiff's Amended Complaint [55]. Because further amendment would be futile, the Court dismisses Plaintiff's claims with prejudice.[1] Civil case terminated.

**IT IS SO ORDERED.**

Date: 7/8/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

---

[1] *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 734–35 (7th Cir. 2014) (affirming dismissal with prejudice of plaintiff's first amended complaint on futility grounds after the court dismissed the initial complaint without prejudice).